IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **DAVID PHILLIPS,** | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. **3:10-CV-1784-L** |
| **L-3 COMMUNICATIONS INTEGRATED, SYSTEMS L.P.,** | § § § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant L-3 Communications Integrated Systems L.P.'s Motion to Dismiss First Amended Complaint, filed February 13, 2012. After carefully reviewing the motion, briefing, pleadings, and applicable law, the court **grants** Defendant L-3 Communications Integrated Systems L.P.'s Motion to Dismiss First Amended Complaint.

**I.    Factual and Procedural Background**

On September 10, 2010, David Phillips ("Phillips" or "Relator") brought this action against L-3 Communications Integrated Systems L.P. ("L-3" or "Defendant") for alleged violations of sections 3729 and 3730 of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*.

Unless otherwise specified, the factual allegations set forth herein are not in dispute. L-3 is a Texas-based company specializing in the modernization and maintenance of aircraft. Phillips worked as a Team Leader 1 for L-3 from June 29, 2009, through February 16, 2010. Phillips was responsible for supervising a team of individuals that modified Beechcraft twin-engine aircraft by installing panels with advanced cameras, antennas, and sensory tracking devices to assist troops in tracking insurgents. L-3 entered into contracts with the United States

Government ("government"), in which L-3 performed these modifications to aircraft and then sold them to the government. Phillips contends that in early November 2009 team member and mechanic Jody West came to him about a defective wavy panel on the bottom of one of the Beechcraft airplanes. Phillips believed that the panel made the aircraft structurally unsafe. He therefore pulled the aircraft from the product line to make necessary repairs and completed a deficiency report. Phillips contends that, after he filed his report, Joe Bob Bennett wrote him up for delaying the production of the aircraft.

Relator alleges that on February 12, 2010, he discovered an issue with another aircraft on the production line named "Liberty 30." Phillips contends that he saw six rivets that were not compliant with Federal Aviation Administration ("FAA") standards. To confirm his suspicions, he requested a gauge from his employer to accurately measure the rivets. Phillips maintains that after his request was denied, he used silicone and a caliper and verified that there was an issue with the rivets. According to Phillips, five of the six rivets measured between .02 inch and .04 inch, whereas FAA standards require each rivet to measure .062 inch. Phillips wrote another discrepancy report regarding the rivets he observed.

Phillips asserts that later that same week, he discovered approximately twenty defective rivets on another aircraft named "Liberty 27." This time Jeff Hooten ("Hooten"), another team leader, prepared a discrepancy report and delivered the report to Manley Sims ("Sims"), who held the position of Manager I at L-3. Phillips alleges that Sims told Hooten not to worry about the rivets, tore up the discrepancy report, and tossed it into the trash. After hearing about the handling of the discrepancy report by Sims, Phillips reported the defective rivets to the day shift supervisor, John Thomas ("Thomas").

Phillips contends that on February 14, 2010, two days after he discovered the alleged rivet defects of Liberty 27, he discovered that Thomas had approved Liberty 27 to be presented to the United States Government Inspector. Phillips alleges that after he discovered that Liberty 27 had been approved, he personally examined the aircraft and discovered that the defective rivets had not been replaced. Phillips contends that Thomas warned, "you better let it go or suffer the harsh reality of your actions" and such threat communicated to Phillips that Liberty 27 would be presented to the United States with defects and that Phillips should not express any further concern regarding the alleged defects.

On February 16, 2010, Relator resigned from L-3. Phillips contends that on the date he resigned, representatives of L-3 gave him the option to quit or to be fired and that he resigned under pressure. Phillips's resignation occurred before L-3 sold the allegedly defective aircraft to the government. Phillips contends that Liberty 27 and Liberty 30 were sold to the United States with defects that compromise the structural integrity and airworthiness of the aircraft, in violation of FAA standards.

Relator thus filed this *qui tam* action, and the United States declined to intervene. L-3 moved to dismiss Phillips's Original Complaint on January 9, 2012. Thereafter, on January 30, 2012, Phillips filed a First Amended Complaint ("Complaint") in an attempt to cure the deficiencies noted in the motion to dismiss, and the court denied as moot L-3's motion. On February 13, 2012, L-3 moved to dismiss Phillips's amended pleading, contending that the following claims either fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure or satisfy Rule 9(b)'s heightened pleading standard: (1) Substantive Violation of False Claims Act, 31 U.S.C. § 3729(a)(1) and (2); (2) Conspiracy Violation of False Claims Act,

31 U.S.C. § 3729(a)(3); (3) Violation of False Claims Act for Retaliatory Discharge, 31 U.S.C. § 3730(h); and (4) Negligence.

## II.     Legal Standards

### A.     Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State*

*Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other*

*grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

**B**.     **Standard for Rule 9(b) - Heightened Standard for Pleading Fraud**

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.,* No. 3:10-CV-1747-B, 2011 U.S. Dist. LEXIS 65912, at *7, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003).

**III.**     **Analysis**

The FCA permits "suits by private parties on behalf of the United States against anyone submitting a false claim to the government," if certain circumstances are met. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 267 (5th Cir. 2010) (internal quotation marks and citation omitted). The FCA imposes civil penalties and treble damages on any person who, *inter alia*, "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* (quoting 31 U.S.C. § 3729(a)(1)(B) (2009)). The

terms "knowing" and "knowingly" mean that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* (quoting § 3729(b)(1)(A)(i)-(iii)). The term "material" is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* (quoting § 3729(b)(4)). The term "claim" is defined as "any request or demand, whether under a contract or otherwise, for money or property . . . that . . . is presented to an officer, employee, or agent of the United States . . . ." *Id.* (quoting § 3729(b)(2)). Thus, to state a claim under the FCA, a plaintiff must allege facts to establish, or facts from which the court can reasonably infer: "(1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the Government." *Steury*, 625 F.3d at 267 (citing *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009)).

### A. Count One - Substantive Violations of False Claims Act, 31 U.S.C. § 3729(a)

#### 1. Sufficiency of Pleadings Under Rule 12(b)(6)

L-3 contends that Count One of Phillips's Complaint should be dismissed under Rule 12(b)(6) because Phillips fails to allege facts necessary to support a cause of action under section 3729 of the False Claims Act. Specifically, L-3 argues that Phillips fails to allege the existence of a false statement or claim submitted to the government. L-3 also argues that Phillips's Complaint fails to state with particularity, as required by Rule 9(b), that L-3 knowingly submitted a material false claim to the government for payment or that L-3 made a material misrepresentation about the alleged aircraft defects to the government in order to get a claim paid. Phillips counters that his pleadings refer to specific defects that he reported and that L-3

nevertheless delivered the aircraft to the United States while representing that the aircraft were airworthy under the FAA as required by the contract between L-3 and the United States.

Phillips asserts that he reported discrepancies with two planes in February 2010. Phillips reported the discrepancy with respect to Liberty 30 on February 12, 2010, and reported the defects with respect to Liberty 27 "[d]uring the same week." Compl. ¶¶ 25-27. On February 16, 2010, Relator resigned from L-3. *Id.* ¶ 29. Relator states that over the subsequent two weeks, he attempted to contact co-workers to determine whether defective planes "were still proceeding through the work line," and received a notice from Jack Russell, Principal Labor Relations Representative of L-3 stating that "L-3 employees had been directed not to respond to any future requests by Relator." *Id.* ¶ 30. Relator alleges that Thomas approved the aircraft to be structurally safe and that his threats indicated that the planes would be presented to the government with the defects. *Id.* ¶ 28. Phillips, however, does not know whether the alleged discrepancies were corrected at the time they were delivered to the government and asks the court to infer that they were not corrected.

Phillips asserts that he "knows that Liberty 27 and Liberty 30 were sold to the United States with defects that compromise the structural integrity and airworthiness of the aircrafts and are in violation of FAA standards." Compl. ¶ 31. Phillips makes the assumption that defective planes were delivered to the government; however, allegations supporting this assumption are lacking because the Complaint is silent as to what took place from the time Phillips resigned on February 16, 2010, until the planes were actually delivered, a date that is *not* provided in the pleadings. From the pleadings, the court cannot determine whether a few days, weeks, or months elapsed between Phillips's termination and the delivery of the aircraft to the government. A short time, that is, a few days or even a week or so, between Phillips's termination and

delivery of the planes would make Phillips's allegations plausible. The court cannot assume a short span of time because the Complaint is devoid of any factual allegations establishing how much time passed between the week of February 16, 2010, the date of Phillips's resignation, and when the planes were actually presented to the government. A court can only reasonably infer the existence of certain facts if there are underlying allegations in support of such facts. In other words, the court cannot make inferences that are speculative or conjectural, which is what Phillips is requesting the court to do. A court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d at 642.

Assuming *arguendo* that the planes were delivered with defective rivets, Relator also does not have any knowledge that L-3's statements or representations to the government were made or carried out with the requisite scienter. Relator does not know whether L-3 made the government aware of the alleged defects at the time of delivery. If the court accepts Philips's facts as true, it is possible that Defendant L-3 is liable for the conduct alleged; however, the "sheer possibility" of wrongdoing is insufficient for the court to reasonably infer wrongdoing on the part of L-3 because "sheer possibility" is insufficient to meet the plausibility standard required by *Twombly* and *Iqbal*. Therefore, the allegations fall short of showing that Phillips is entitled to relief. *See Iqbal*, 556 U.S. at 679.

Furthermore, the FCA "was not designed to reach every kind of fraud practiced on the Government." *United States v. McNinch*, 356 U.S. 595, 599 (1958). Rather, it primarily protects against government contractors "billing for nonexistent or worthless goods or charging exorbitant prices for delivered goods." *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460 (5th Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978) (citing *McNinch*, 356 U.S. at

599). "Not every breach of a federal contract is an FCA problem." *Steury*, 625 F.3d at 268. Thus, dismissal of false-certification claims (implied or express) is repeatedly upheld "when a contractor's compliance with federal statutes, regulations, or contract provisions was not a 'condition' or 'prerequisite' for payment under a contract." *Id.*

Relator pleads that Defendant certified that Liberty 27 and Liberty 30 were compliant with the FAA standards when the planes were not actually compliant. Relator asserts that the alleged defects caused the planes not to meet FAA standards and compromised the structural integrity of the aircraft. Compl. ¶ 28 "[F]alse certifications of compliance create liability under the FCA when certification is a prerequisite to obtaining a government benefit." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997). "[W]here the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation." *Id.* "Courts have at times located the prerequisite requirement in the materiality prong of FCA analysis." *Steury*, 625 F.3d at 269 (citing *United States ex rel. Marcy v. Rowan Co.*, 520 F.3d 384, 389 (5th Cir. 2008) ("A material claim is one that is required to be made in order to receive the relevant government benefit."). The term "material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Steury*, 625 F.3d at 267 (quoting 31 U.S.C. § 3729 (b)(4)). Relator pleaded that "FAA certificates of airworthiness" were required by the government (Compl. Ex. A); however, Relator has not alleged how the defective rivets affect certificates of airworthiness and how those standards would have affected the government's payment decision. Phillips has therefore failed to adequately plead materiality. As Relator has failed to allege a false statement or fraudulent course of conduct made or carried

out with the requisite scienter that was material (*see Steury*, 625 F.3d at 267), he has failed to state a claim under the FCA. Accordingly, the court will dismiss Count One of Relator's Complaint.

### 2. Sufficiency of Pleadings Under Rule 9(b)

Even if Philips's claim withstands Rule 12(b)(6) scrutiny, for the reasons that follow, it fails to meet the pleading requirements of Rule 9(b). The pleading standards of Rule 9(b) govern an FCA complaint. *United States ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 872-873 (5th Cir. 2008) (citation omitted). "Because the linchpin of an FCA claim is a false claim, the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b)." *Id.* (internal quotation marks and citation omitted). The "time, place, contents, and identity" standard, however, "is not a straitjacket for Rule 9(b)." *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). "Rather, the rule is context specific and flexible and must remain so to achieve the remedial purpose of the False Claim[s] Act." *Id.* Accordingly, to plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, "a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.*

Phillips states that he "knows that Liberty 27 and Liberty 30 were sold to the United States with defects that compromise the structural integrity and airworthiness of the aircrafts and are in violation of FAA standards." Compl. ¶ 31. Phillips, however, does not allege with

particularity the time, place, or manner of delivery. Phillips also does not allege what was stated to the government regarding the alleged defects.

Relator argues, however, that his allegations lead to the strong inference that Defendant presented false claims to the government. Response 6. In *Grubbs,* the relator (a doctor) alleged that a hospital and doctors billed Medicare and Medicaid for services that were not performed. The relator's complaint alleged that over dinner, the doctors divulged to him their fraudulent billing scheme and instructed him on how he was to contribute to the scheme. *Grubbs*, 565 F.3d at 184. The relator's complaint further alleged that the doctors instructed him that during weekend on-call shifts doctors met with the nursing staff to get updates on current patients. The doctors then saw the patients only as needed but billed every day as a regular face-to-face hospital visit. *Id.* The relator further alleged that that during his on-call weekend, the nursing staff did indeed attempt to assist him in recording face-to-face physician visits that had not occurred. In addition, the relator's complaint alleged at least one overt act of false billing for each doctor. *Id.* at 184-85.

The court held that a relator does not necessarily need to plead the contents of a bill, that is, the exact dollar amounts, billing numbers, or dates, because the particular circumstances constituting the fraudulent presentment are often harbored in the scheme. *Id.* at 190. The court determined that the relator's complaint satisfied Rule 9(b) on its 3729(a)(1) claim, as he "describe[d] in detail, including the date, place, and participants, the dinner meeting at which two doctors in his section attempted to bring him into the fold of their on-going fraudulent plot." *Id.* at 191-92. Further, the court observed that the relator also alleged "specific dates that each doctor falsely claimed to have provided services to patients and often the type of medical service

or its Current Procedural Terminology code that would have been used in the bill." *Id.* at 192. Thus, the court held that

> Taking the allegations of the scheme and the relator's own alleged experience as true, as we must on a motion to dismiss, and considering the complaint's list of dates that specified, unprovided services were recorded amounts to more than probable, nigh likely, circumstantial evidence that the doctors' fraudulent records caused the hospital's billing system in due course to present fraudulent claims to the Government.

*Grubbs*, 565 F.3d at 192.

Phillips's Complaint does not even approach the level of specificity contemplated by Rule 9(b) or by *Grubbs*. Phillips does not detail a scheme to present fraudulent claims to the government. Relator does not allege who represented that the planes satisfied FAA guidelines, when such representation occurred, and how L-3's failure to comply with the FAA standards would have affected the government's payment decision. As Phillips has failed to plead a false claim with the requisite particularity required by Rule 9(b), this rule serves as an additional basis to dismiss Count One of the Complaint.

### B. Count Two - Conspiracy Violation of False Claims Act, 31 U.S.C. § 3729(a)(3)

L-3 contends that Count Two of Phillips's Complaint, which purportedly states a conspiracy claim under 31 U.S.C. § 3729(a)(3), should be dismissed because Phillips's underlying FCA claim fails. General civil conspiracy principles apply to conspiracy claims under the False Claims Act. *United States ex rel. Coppock v. Northrop Grumman Corp.*, 2003 WL 21730668, at 14 n.17 (N.D. Tex. July 22, 2003) (citing *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir.1991)); *United States v. ITT Educ. Servs.*, 284 F. Supp. 2d 487, 509 (S.D. Tex. 2003) (citing *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 546 n.3 (7th Cir. 1999)). "A claim for civil conspiracy is generally not viable without the commission of an

underlying wrongful act[.]" (alteration in original). *Coppock,* 2003 WL 21730668, at *14 n.17 (citing *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir.1983)); *see also Petrello v. Prucka*, 2012 WL 3139561 (5th Cir. Aug. 2, 2012) (The plaintiff (buyer) alleged that the sellers had conspired and engaged in handicap discrimination against his family in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(1) and 42 U.S.C. § 1985(3). As there was no actionable FHA claim against the defendants, the plaintiff's civil conspiracy claim failed.) Accordingly, because there is no actionable FCA claim against L-3, Phillips's civil conspiracy claim fails.

L-3 also argues that Phillips did not allege an agreement to conspire, did not identify who conspired with L-3, and failed to explain how these parties sought to get a false or fraudulent claim paid by the government. The court agrees. Rule 9(b) also applies to the section 3729(a)(3) claims. *Grubbs*, 565 F.3d at 193. "[A] plaintiff alleging a conspiracy to commit fraud must plead with particularity the conspiracy as well as the overt acts taken in furtherance of the conspiracy." *Id.* (internal quotation marks, citation and ellipses omitted). To prove a conspiracy, a plaintiff ultimately must be able to show: "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the government] and (2) at least one act performed in furtherance of that agreement." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008). "As part of that showing, the plaintiff must demonstrate that the defendants shared a specific intent to defraud the government." *Id.*

Relator alleges that "Defendant entered into a conspiracy to defraud the United States to obtain the above-alleged contracts/subcontracts and to get false and fraudulent claims allowed or paid." Compl. ¶ 40. The only party identified by Phillips in the Complaint is L-3. "To establish a civil conspiracy, a plaintiff must be able to show, *inter alia*, a meeting of the minds of *two or*

*more persons* on the object or course of action." *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996) (emphasis added). Phillips has not identified any individual or entity that conspired with L-3. Phillips has not alleged that any employees of L-3 worked in concert to defraud the government. Relator has not set forth facts alleging an agreement to conspire. Phillips's factual allegations of a conspiracy are speculative and conclusory. While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). As Phillips has not alleged anything more than conclusions and a recitation of the elements of a conspiracy claim, the court will dismiss Count Two of Phillips's Complaint.

Moreover, Relator has provided no response to L-3's motion to dismiss his conspiracy claim, and the court treats his failure as an abandonment of the conspiracy claim. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (The plaintiff failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss. Her failure to pursue this claim beyond her complaint constituted abandonment.))

   **C.**  **Count Three - Violation of False Claims Act for Retaliatory Discharge, 31 U.S.C. § 3730(h)**

L-3 moves to dismiss Phillips's claim that his resignation was an unlawful termination "for reporting wrongful and unlawful actions within the company," in violation of 31 U.S.C. § 3730(h). "The whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h), encourages employees with knowledge of fraud to come forward by prohibiting retaliation against employees who assist in or bring *qui tam* actions against their employers." *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371 (5th Cir. 2011) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994)). Section 3730(h), protects "lawful

acts done by [an] employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h). To bring an FCA retaliation claim for his "termination," Phillips was required to show that he engaged in activity protected under the statute, that his employer knew he engaged in protected activity, and that he was discharged because of it." *Patton* 418 F. App'x at 371 (citing 31 U.S.C. § 3730(h) and *Robertson*, 32 F.3d at 951).

In *Patton*, the relator ("Patton") asserted that he complained repeatedly to supervisors about "fraudulent construction mistakes," the same allegedly improper construction methods that the relator alleged gave rise to his section 3729 claims. *Patton*, 418 F. App'x at 372. The court determined that, although Patton alleged that he internally reported "fraud," the substance of his complaints concerned his employer's allegedly unsafe or improper construction methods, and not that Patton was concerned that his employer was defrauding the government. *Id.* "For internal complaints to constitute protected activity 'in furtherance of' a *qui tam* action, the complaints must concern false or fraudulent claims for payment submitted to the government." *Id*. (citing *Robertson*, 32 F.3d at 952 (finding no protected activity where employee "never characterized his concerns as involving illegal, unlawful, or false-claims investigations"). The court held that "mere criticism of the employer's construction methods, without any suggestion that Patton was attempting to expose illegality or fraud within the meaning of the FCA, does not rise to the level of protected activity." *Patton*, 418 F. App'x at 372 .

In the case *sub judice*, Phillips alleges that he reported defective rivets, that he was concerned the rivets did not meet FAA standards, and that alleged defects were compromising the structural integrity of the aircraft. Compl. ¶ 28. The Complaint specifically sets forth Relator's concern with respect to the alleged defects: "Relator was concerned that our military

troops would be flying in the aircraft and the loss of the skin panel integrity would result in structural failure of the aircraft and a loss of lives." *Id.* Phillips has not alleged that he reported to his employer that he believed L-3 was submitting fraudulent claims for payment to the government. As in *Patton*, the substance of Phillips's complaints concerned his employer's allegedly defective rivets that affected the structural integrity of the aircraft, and not that Phillips was concerned that his employer was defrauding the government. Accordingly, Phillips has not alleged that he participated in protected activity, and the court will dismiss his claim for retaliatory discharge. Furthermore, Relator has provided no response to L-3's motion to dismiss his retaliatory discharge claim, and the court treats his failure as an abandonment of this claim.

### D.     Count Four – Negligence

To prevail on a negligence claim under Texas law, an employee must show that: (1) the defendant owed him a duty, (2) the defendant breached its duty, (3) the defendant's breach proximately caused his injuries, and (4) damages resulted from this breach. *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 710 (Tex. 2003) (citation omitted). L-3 argues that Phillips's pleadings fail to state a claim for negligence because Phillips was an employee at-will and therefore the employer, L-3, is under no duty to maintain Phillips's employment.

It is unclear from the Complaint whether Phillips was an at-will employee of L-3. The court cannot accept Defendant's assertion that Phillips was an at-will employee as true. In reviewing a Rule 12(b)(6) motion, the court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d at 774. In his three-sentence negligence claim, Phillips asserts that he was "owed a duty a due of care regarding his employment in L-3, which duty was breached by L-3 Communications, proximately causing Plaintiff damage." Compl. ¶ 49. Relator merely recites the elements of a negligence claim. While a complaint need not contain detailed factual

allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). Phillips has not pleaded sufficient facts to state a claim for negligence; thus, the court will dismiss this claim. Further, because Phillips has provided no response to L-3's motion to dismiss his negligence claim, the court treats his failure as an abandonment of this claim.

## IV. Amendment of Pleadings

Relator has requested the court to allow further amendment of his Complaint if it believes that he has not stated a claim upon which relief can be granted. The decision to allow amendment of the pleadings is within the sound discretion of the district court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). In determining whether to allow an amendment of the pleadings, the court considers the following: undue delay in the proceedings, undue prejudice to the opposing parties, failure to cure prior deficiencies, timeliness of the amendment, and futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182; *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982).

The court concludes that Plaintiff has stated his best case. As the Fifth Circuit has stated, "[a]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Relator amended his Complaint in response to a prior motion to dismiss that set forth the *same* defects asserted in the present motion to dismiss. Relator had plenty of opportunity to plead any facts of which he has knowledge in support of a claim against Defendant. He was put on notice by Defendant of the same deficiencies; nevertheless, he asserts the sufficiency of his allegations but includes a catchall request to amend his Complaint if the court deems it insufficient. The court does not

**Memorandum Opinion and Order – Page 18**

know how Phillips can now amend his Complaint that states a claim in light of being put on earlier notice of the deficiencies. Moreover, Phillips gives the court no hint of what additional allegations he would set forth to meet the heightened pleading requirement of Rule 9(b). In sum, the court concludes that Phillips has failed to cure prior deficiencies after being put on notice; that further amendment would unnecessarily delay these proceedings; that further amendment would be futile in light of his failure to apprise the court of what allegations he could assert to state a claim as to Count One and the three abandoned claims.

## V.     Conclusion

For the reasons herein stated, Relator fails to state a claim upon which relief can be granted. Accordingly, the court **grants** Defendant L-3 Communications Integrated Systems L.P.'s Motion to Dismiss First Amended Complaint, and this action is **dismissed with prejudice.** Judgment will be entered by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 24th day of August, 2012.

_____
Sam A. Lindsay
United States District Judge